UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIA TELESCA,

                              Plaintiff,         **MEMORANDUM OF**
                                        **<u>DECISION AND ORDER</u>**
              -against-                 05-cv-05509(ADS)(ETB)

THE LONG ISLAND HOUSING PARTNERSHIP,
INC.; BAY SHORE PARTNERSHIP HOUSING
DEVELOPMENT FUND COMPANY, INC.;
TOWN OF ISLIP; BEECHWOOD SOUTH WIND
BUILDING CORP.; NEW YORK STATE
DIVISION OF HOUSING AND COMMUNITY
RENEWAL; and TOWN OF HUNTINGTON,

                              Defendants.
-------------------------------------------------------------X


**<u>APPEARANCES</u>**

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Attorneys for the plaintiff Maria Telesca
1633 Broadway
New York, NY 10019-6708
        By:    Lee David Vartan, Esq.
             of Counsel

**L'ABATE, BALKAN, COLAVITA & CONTINI, L.L.P.**
Attorneys for the defendants The Long Island Housing Partnership, Inc. and Bay
Shore Partnership Housing Development Fund Company, Inc.
1050 Franklin Avenue
Fourth Floor
Garden City, NY 11530
        By:    Peter L. Contini, Esq.
             of Counsel

**WILLIAM D. WEXLER, ESQ.**
Attorney for the defendant Town of Islip
816 Deer Park Avenue
North Babylon, NY 11703

**KAUFMAN DOLOWICH SCHNEIDER BIANCO & VOLUCK, LLP**
Attorneys for the defendants Beechwood South Wind Building Corp.
135 Crossways Park Drive
Suite 201
Woodbury, NY 11797
        By:    Andrew L. Richards, Esq., and Keith J. Gutstein, Esq.
            of Counsel

**ELLIOT SPITZER**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
Attorney for the defendant New York State Division of Housing and Community Renewal
200 Old Country Road, Suite 460
Mineola, NY 11501
        By:    Toni E. Logue, Assistant Attorney General

**JOHN J. LEO**
**HUNTINGTON TOWN ATTORNEY**
Attorney for the Defendant Town of Huntington
100 Main Street
Huntington, New York 11743
        By    Margaret L. Pezzino, Assistant Town Attorney

**SPATT, District Judge.**

This is a civil action by Maria Telesca ("Telesca" or the "Plaintiff"), who suffers from a type of dwarfism that impairs her mobility, seeking monetary damages and enforcement of Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (2006). This lawsuit is brought against the defendants the Long Island Housing Partnership, Inc. ("LIHP"), Bay Shore Partnership Housing Development

2

Fund Company, Inc. ("Bay Shore Partnership"), the Town of Islip, Beechwood South Wind Building Corp. ("Beechwood"), the New York State Division of Housing and Community Renewal ("DHCR"), and the Town of Huntington. The Plaintiff alleges that the Defendants received federal funds towards the construction of affordable housing on Long Island without complying with their obligations under federal disability laws and regulations. Presently before the Court are motions by LIHP, Bay Shore Partnership, the Town of Islip, and the DHCR, to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and by the Town of Huntington for judgment on the pleadings under Fed. R. Civ. P. 12(c).

## I.  BACKGROUND

The following facts are alleged in the complaint, unless otherwise noted. The Plaintiff has Achondroplasia, a type of dwarfism that causes spinal chord compression and degenerative disc disease. The condition impairs her mobility, and causes consistent pain. To alleviate these symptoms, doctors have advised Telesca to avoid ascending or descending stairs, and recommended that she use a motorized scooter to reduce the pressure on her spine and to conserve energy. Due to her condition, Telesca depends primarily on Social Security disability for income, and as a result, needs to find housing that is both handicapped-accessible and affordable, which she claims is largely non-existent on Long Island.

In response to the affordable housing crisis on Long Island, state and local governments have created agencies to help address and remedy the problem. These agencies include certain defendants in this case: DCHR, a New York State agency that is responsible for the supervision, maintenance, and development of affordable low and moderate-income housing in New York State; LIHP, a not-for-profit corporation formed in 1987 with the mission to remedy Long Island's affordable housing crisis, that serves as an intermediary by bringing together federal and state funding agencies; its affiliate Bay Shore Partnership (collectively referred to as "LIHP"); and the Huntington Community Development Agency, an agency of the defendant Town of Huntington. These agencies assist in marshaling and coordinating the resources of the United States Department of Housing and Urban Development ("HUD"); local municipalities, such as the defendants Town of Islip and Town of Huntington; private businesses; and private developers, such as defendant Beechwood, to help construct affordable housing on Long Island.

Due to the high demand for affordable housing, the units are typically awarded to qualified low-income applicants through the process of a lottery. In the complaint, Telesca alleges that she applied to participate in the lotteries of two projects, one organized by Bay Shore Partnership, and the other by Huntington Community Development Agency.

The first lottery was for a unit in the South Wind Village in the Town of Islip. This project development was organized by LIHP, who brought together approximately $5 million dollars in HUD funds that were originally received by DCHR and the Town of Islip. It is alleged that the federal assistance came from grants known as Community Development Block Grant funds ("CDBG") and HUD HOME funds. The project consisted of 52 two-level homeowner units, constructed by Beechwood, and all offered for $84,000, which was well below the estimated $200,000 market value at the time of construction.

On June 25, 2001, Telesca was notified that she had been selected to purchase a home at South Wind Village. Upon being notified, Telesca informed LIHP that she would need a handicapped-accessible unit. However, she learned that none of the units were handicap accessible. Throughout the summer and into the fall of 2001 Telesca had meetings and conversations with representatives from LIHP, regarding accessibility alterations that would need to be done in order for her to reside in the unit. Telesca explained that her disability prevented her from navigating stairs, and that would prevent her from accessing the second floor of the unit. She further explained that she required either a single-level unit or an elevator. A chair lift, the suggested accommodation made by LIHP, was an imperfect solution because the lift would not be able to transport her motorized scooter to the second floor.

On October 31, 2001, Telesca received a memorandum from LIHP, stating, "After reviewing your suggestions, they are not reasonable and [LIHP] does not know whether you would be able to afford them. Installation of an elevator and elevator shaft you discussed with [the] architect would require a structural change to the unit and is not feasible. As previously discussed, this unit has already been built. A ranch style homes [sic] is not an option in this development as they are townhouse units." The memorandum concluded, "We look forward to your decision whether you plan to purchase the unit with some or all of the suggested changes as identified on the blueprints at your expense." Compl. ¶ 33.

On November 7, 2001, Telesca received a second memorandum from LIHP in which they agreed to pay for any accessibility alterations required, but did not make clear whether the purchase price would be increased to offset the costs of constructing and installing an elevator. Telesca requested additional information and an extension of time to contact individuals knowledgeable about disability law. LIHP allegedly refused, and informed her on November 15, 2001, that it was offering her home to the next qualified applicant.

In April 2002, Telesca filed an administrative complaint with HUD against LIHP for violations of the Fair Housing Act and the Rehabilitation Act. HUD referred the Fair Housing Act violation to the New York State Division of Human Rights, who determined that there was "no probable cause" to investigate. As to the Rehabilitation

Act, HUD made the preliminary finding that it lacked jurisdiction over the matter. Telesca timely appealed the preliminary administrative determination by HUD, but to date has not received a decision. Telesca claims that in retaliation for this complaint, her subsequent applications to LIHP for affordable housing in new homeowner lotteries have been ignored.

The second project Telesca applied for is known as the Villages West in the Town of Huntington. The complaint alleges that the construction of the project was subsidized with CDBG funds from HUD. Unlike South Wind Village, the Villages West development included market-price homes as well as affordable homeowner units. The developer, McGovern-Barbash Associates, was awarded a density bonus to build affordable housing, that is, it could construct more homes than the Town of Huntington's zoning ordinance would otherwise allow, in exchange for a commitment to construct 60 homeowner units at below market rates. Telesca qualified and participated in the lottery for a unit in Villages West, but has not yet been selected to purchase a home. Currently, Telesca states that she is number 2,312 on a list of 2,904 applicants.

Telesca claims that the lotteries conducted by the defendants, including the ones with regard to the South Wind Village and the Villages West, violate federal law because the projects are partially funded by federal funds, but the lotteries are not affirmatively advertised or noticed to the disability community. In addition, she

claims that the Rehabilitation Act and its implementing regulations require that 5% of

units be set aside for home buyers with mobility impairments or 2% of units for home

buyers with visual or auditory impairments.

## II.  DISCUSSION

**A.      The Legal Standards**

**1.        The Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a district court must

"accept all of the plaintiff's factual allegations in the complaint as true and draw

inferences from those allegations in the light most favorable to the plaintiff."

Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999);

see also Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003); Friedl v. City of

New York, 210 F.3d 79, 83 (2d Cir. 2000).  A complaint should not be dismissed

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  Dangler v. New York City Off Track

Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999) (quoting Conley v. Gibson, 355 U.S.

41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99, 102 (1957)); see also Curto v. Edmundson, 392

F.3d 502, 503 (2d Cir. 2003).  "The issue is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims."

King v. Simpson, 189 F.3d 248, 287 (2d Cir. 1999) (quoting Villager Pond, Inc. v.

Town of Darien, 56 F.3d 375, 378 (2d Cir. 1999)).

In addition to the forgoing standard governing motions under Rule 12(b)(6), the Court must be mindful of the relevant rules of pleading. In general, a complaint "need not include specific facts establishing a prima facie case of discrimination and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." Leibowitz v. Cornell University, 445 F.3d 586, 591 (2d Cir. 2006) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) and Fed. R. Civ. P. 8(a)(2)). In addition, "all pleadings shall be construed as to do substantial justice." Protter v.Nathan's Famous Sys., Inc., 904 F. Supp. 101, 105 (E.D.N.Y. 1995) (quoting Fed. R. Civ. P. 8(f)).

Upholding this liberal pleading standard is the requirement that the court not consider matters outside the pleadings. The court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). Rule 12(b)(6) provides:

> [i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b)(6) (emphasis added).

As indicated by the word "shall," the conversion of the motion to dismiss to one for summary judgment is mandatory if the court considers matters outside the pleadings.  See Global Communications, Inc. v. City of New York, No. 05-3298, 2006 WL 2106632, Slip Op. at 8 (2d Cir. July 21, 2006); Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999).  However, the court has discretion to "exclude the additional material and decide the motion on the complaint alone . . . ." Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (internal quotations omitted); see Moses v. Citicorp Mortg., Inc., 982 F. Supp. 897, 901–02 (E.D.N.Y. 1997).

In support of the motion by the defendants LIHP, Town of Islip, and DHCR to dismiss the complaint, they rely on a number of materials that have been submitted outside of the pleadings, including an affidavit, and numerous exhibits.  They argue that the extraneous exhibits, which include filings submitted to the New York State Division of Human Rights and HUD, as well as documents such as the notices issued by HUD, and public documents filed in the Plaintiff's administrative proceedings, can be considered in this motion without conversion to summary judgment because they provide factual and evidentiary detail that either amplifies, or refutes, the allegations alleged in the complaint.  The Court disagrees.

The Second Circuit has never condoned considering material outside the pleadings on a motion to dismiss if such material amplifies or refutes allegations in the complaint.  See Global Communications, Slip Op. at 12.  Instead, it is well-established

that the court may only consider materials outside the pleadings that are either an appropriate subject for judicial notice, or were integral to the complaint or incorporated in it by reference.  See Leonard F., 199 F.3d at 107; Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991); Kramer v. Time Warner Inc., 937 F.2d 767, 773–74 (2d Cir. 1991).  "Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus submitted by the moving party in support of a motion to dismiss."  Global Communications, Slip Op. at 13 (citing Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988)).  To be "integral" the plaintiff must have relied on the terms and effects of the document in drafting the complaint.  Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002).  As for judicial notice, the court may take notice of public documents filed in another proceeding, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

Here, it is clear that the extraneous documents submitted by the defendants, all of which were created after the alleged facts in the complaint occurred, were not relied on by the Plaintiff to draft the complaint.  Instead, the defendants seek the introduction of such materials to convince the Court that the facts, as alleged in the complaint, are not true.  Consideration of such material for this purpose, without converting the motion to one for summary judgment, is improper at this stage of the proceedings.

Accordingly, the Court declines to consider the materials submitted outside the pleadings. Further, without the parties having a full opportunity for discovery in this case, the Court declines to convert the motion to one for summary judgment.

## 2. The Rule 12(c) Standard

The standard of review on a motion for judgment on the pleadings under Rule 12(c) is whether "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Serv., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995). Under Rule 12(c), all well-pleaded facts and allegations in the non-moving party's pleading are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false. This standard is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Lab., 850 F.2d 904, 909 n.2 (2d Cir. 1988).

The function of the Court is not to weigh the evidence that may be presented at trial but instead the Court must determine if the claims are legally sufficient. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985); see also King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999). Therefore, a court must evaluate whether the allegations in the complaint can sustain a cause of action under applicable law, and should grant the motion to dismiss only if the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002); King v. Simpson,

189 F.3d 284, 286 (2d Cir. 1999). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

**B.      The Rehabilitation Act**

The Rehabilitation Act of 1973, a predecessor to the Americans With Disabilities Act ("ADA"), was the original vehicle designed to address disability discrimination and "is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004); 29 U.S.C. § 794(a). Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

Together, the Rehabilitation Act and the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive "reasonable accommodations" that allow them to access and partake in public services and public accommodations. Powell, 364 F.3d at 85; see Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003); Felix v. New York City Transit Auth., 324 F.3d 102, 104 (2d Cir. 2003).

In this case Telesca's complaint asserts one cause of action under the Rehabilitation Act that seeks two distinct avenues of relief. First, the Plaintiff seeks monetary damages from LIHP, Town of Islip, and DHCR under Section 504 of the Rehabilitation Act, for their alleged discriminatory and retaliatory conduct of excluding her from purchasing a home in the South Wind Village, and other affordable housing programs, due to her disability. Second, the Plaintiff seeks injunctive relief against all of the defendants to enforce certain HUD regulations implementing the Rehabilitation Act. The Court will address each request for relief separately.

**C.      The Claim for Monetary Damages under Section 504**

Under Section 504 of the Rehabilitation Act, there is a private right of action against recipients of federal funds that deny benefits to otherwise qualified applicants due to a disability. 29 U.S.C. § 794a(a)(2); Marlow v. United States Department of Education, 820 F.2d 581, 584 (2d Cir.1987); Kampmeier v. Nyquist, 553 F.2d 296, 299 (2d Cir. 1977); see also Henrietta D., 331 F.3d at 272; Bennett v. New York City Housing Authority, 248 F. Supp. 2d 166, 170 (E.D.N.Y. 2002). In order to prove a violation of Section 504 of the Rehabilitation Act, a plaintiff must show:

> (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is otherwise qualified for the benefit that has been denied, (3) that he has been denied the benefits solely by reason of his disability, and (4) that the benefit is part of a program or activity receiving Federal financial assistance.

Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 628 (S.D.N.Y.,2005) (quotations omitted) (citing Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir. 1995)).

LIHP, the Town of Islip, and DHCR do not dispute that the Plaintiff is a qualified individual with a disability and that they are subject to the Rehabilitation Act. See Dexler v. Tisch, 660 F. Supp. 1418, 1419 (D. Conn. 1987) (recognizing Achondroplastic dwarfism as a disability that is characterized by a growth disorder affecting all four extremities resulting in short limbs and short stature). Rather, they argue that the "established irrefutable facts are that the [P]laintiff was not denied her townhouse 'solely' because of her disability but rather because she was not willing to complete the application process." LIHP Reply Mem. at 8. To support this argument, they rely on the determinations of the New York State Division of Human Rights, and the preliminary administrative determination of HUD. However, as stated above, the Court cannot properly consider these documents in this motion, which only determines whether the plaintiff is entitled to offer evidence to support the claims. Even if this Court could consider such documents, it is well-settled that unreviewed administrative determinations have absolutely no preclusive effect on discrimination claims in federal court. See University of Tennessee v. Elliott, 478 U.S. 788, 796, 106 S. Ct. 3220, 3225, 92 L. Ed. 2d 635 (1986). Instead, a plaintiff that adequately pleads a claim of discrimination is entitled to a trial de novo. Id.

The Town of Islip argues that the complaint is insufficient under Fed. R. Civ. P. 8(a)(2), which requires that a complaint contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." Id. This argument is not only without merit, it is untimely. Prior to filing its motion under Rule 12(b)(6), the Town of Islip filed an answer to the complaint. Although courts will generally rule on an untimely motion to dismiss that is filed after the answer, the defendant's previously-filed answer must expressly preserve the defense. See Anderson v. Sullivan, No. 03CV4064 (DRH)(MLO), 2005 WL 1123772, at *2 (E.D.N.Y. May 9, 20052005). The Town of Islip's answer does not include any defense under Fed. R. Civ. P. 8. Accordingly, this argument is denied as untimely.

Finally, all of the arguments by DHCR, LIHP, and the Town of Islip with regard to the sufficiency of the Plaintiff's Section 504 claim are in direct contravention to the clear allegations of the complaint. Telesca alleges that she was selected to purchase an affordable home in the South Wind Village, a program that was supervised by DHCR, organized by LIHP, and partially funded with federal funds from the DHCR and the Town of Islip. After being selected, Telesca requested that she be able to purchase a handicap accessible unit. She further alleges that after such requests were denied, she was informed that her townhouse would be offered to another applicant. Clearly, such allegations are sufficient under the liberal pleading standards to put the defendants on notice of her disability discrimination claim and permit her to offer evidence to support such allegations. Accordingly, Telesca is

entitled to proceed on her complaint against LIHP, the Town of Islip, and DHCR

under Section 504 of the Rehabilitation Act.

**D.      Enforcement of the HUD Disability Regulations**

The Plaintiff also alleges that the defendants policies violate the Rehabilitation

Act and its implementing regulations, located at 24 C.F.R. Part 8.  In her complaint,

Telesca seeks an order compelling the defendants to: (1) affirmatively market future

homeownership opportunities to persons with disabilities; (2) conduct future lotteries

and other selection methods for affordable housing in a manner that ensures that

disabled applicants have access to handicapped-accessible homeowner units; (3) make

five percent or at least one, whichever is greater, of all future homeowner unit

developments constructed with or subsidized by federal dollars accessible to those

with mobility impairments; (4) make two percent or at least one, whichever is greater,

of all future homeowner unit developments constructed with or subsidized by federal

dollars accessible to those with visual or auditory impairments; and (5) make available

to Telesca a fully accessible homeowner unit on Long Island, comparable in price,

location, and size to that which she was offered at South Wind Village.

The defendants do not argue, as the Third Circuit has decided, that an

individual does not have the right under the Rehabilitation Act to compel compliance

with HUD regulations.  See Three Rivers Center for Independent Living v. Housing

Authority of City of Pittsburgh, 382 F.3d 412, 430 (3d Cir. 2004) ("[P]laintiffs cannot

enforce the regulations by way of Section 504's private right of action."); see also

Alexander v. Sandoval 532 U.S. 275, 293, 121 S. Ct. 1511, 1523, 149 L. Ed. 2d 517

(2001) (holding that Title VI does not permit a private right of action to enforce its

implementing regulations).  But see Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581,

590, n.4, 119 S. Ct. 2176, 2182, n.4, 144 L. Ed. 2d 540 (1999) (stating that compliance

with federal disability regulations "may be effected by the termination or denial of

federal funds, or by any other means authorized at law and in equity . . ." in 42 U.S.C.

§ 2000d-1).

      Instead, the defendants argue that the implementing regulations that Telesca

seeks to enforce are inapplicable to the affordable housing offered for sale by the

defendants.  Because the Court agrees that the regulations are inapplicable, it need not

analyze the interesting issue of whether the Second Circuit would permit private

individuals to bring an action under the Rehabilitation Act to compel compliance with

HUD regulations.  See Dopico v. Goldschmidt, 687 F.2d 644, 651, n.5 (2d Cir. 1982)

("[P]laintiffs' private right of action under section 504 encompasses a right to allege

violations of the [implementing] regulations."); Stamm v. New York City Transit

Authority, No. 04-CV-2163 (SLT), 2006 WL 1027142, at *12(E.D.N.Y. Feb. 7, 2006)

("Sandoval did not hold, or even imply, that there is no private right of action to

enforce regulations implementing the provisions of the ADA or Rehabilitation Act.").

Congress specifically gave federal agencies the task to promulgate regulations to carry out the purpose of the Rehabilitation Act.  <u>See</u> 29 U.S.C. § 794(a).  HUD is the federal agency created by Congress "to remedy acute shortages of decent, sanitary housing for low-income families . . . ."  <u>Cole v. Lynn</u>, 389 F. Supp. 99, 102 (D.D.C. 1975)(citing 42 U.S.C. § 1441a).  Consistent with that mission, HUD issued regulations implementing the Rehabilitation Act with regard to the procurement of federal funds for housing assistance to state and local governments.  <u>See</u> Nondiscrimination Based on Handicap in Federally Assisted Programs and Activities of the Department of Housing and Urban Development, 53 Fed. Reg. 20216 (June 2, 1988) (codified at 24 C.F.R. pt. 8).  These regulations cover, among other things, requirements for federal funds directed at "multi-family housing projects," 42 C.F.R. § 8.22–.27, and "homeownership programs," <u>id.</u> § 8.29.

Telesca argues that the provisions of 42 C.F.R. § 8.22–.27 covering "multifamily housing projects," apply to the affordable housing projects built for sale by the defendants to qualified low-income applicants, and contend that they are being ignored by the defendants.  Section 8.22–.27 requires, among other things, that any federally funded new construction of "multifamily housing projects" set aside a certain percentage of housing specifically for the disabled.  The regulation, in relevant part, states:

> [A] minimum of five percent of the total dwelling units or at least one unit
> in a multifamily housing project, whichever is greater, shall be made

accessible for persons with mobility impairments. . . . An additional two percent of the units (but not less than one unit) in such a project shall be accessible for persons with hearing or vision impairments.

24 C.F.R. § 8.22.

In addition, the regulations require that "multifamily housing projects" be specifically marketed to people with disabilities:

[P]rojects having accessible units shall adopt suitable means to assure that information regarding the availability of accessible units reaches eligible individuals with handicaps, and shall take reasonable nondiscriminatory steps to maximize the utilization of such units by eligible individuals whose disability requires the accessibility features of the particular unit.

24 C.F.R. § 8.27.

Telesca contends that these regulations are applicable to the units sold by the defendants because the definition of "multifamily housing project" in the regulations does not specifically limit its use to "rental units." The Court disagrees. HUD defines a multifamily housing project as "a project containing five or more dwelling units." 24 C.F.R. § 8.3. The supplementary information in the preamble to the Rule provides an example of a multifamily project, that is, "three separate two-family structures (i.e., six dwelling units) . . . ." Nondiscrimination Based on Handicap in Federally Assisted Programs and Activities of HUD, 53 Fed. Reg. at 20223. In addition, the Rule explains that "[t]his definition is consistent with the definition of multifamily housing project[s] in Section 207(c) of the National Housing Act, 12 U.S.C. 1713." Id.

Section 207 of the National Housing Act, 12 U.S.C. § 1713, does not specifically define a "multifamily housing project."  However, the section clearly involves the insurance of mortgages "intended to facilitate particularly the production of <u>rental accommodations</u>, at reasonable rents, of design and size suitable for family living."  <u>Id.</u> (emphasis added).  In addition, the implementing regulations under the National Housing Act, and numerous other provision of that Act, consistently use the term "multifamily housing project" in connection with rental subsidized units or housing assistance payments.  <u>See</u> 24 C.F.R. §§ 245.10 & 247.2.

Other sections of the National Housing Act specifically limit the definition of "multifamily housing project" to rental projects.  For example, in 12 U.S.C. § 1701z-11, "[t]he term 'multifamily housing project' means any multifamily rental housing project which is, or prior to acquisition by the Secretary was, assisted or insured under the National Housing Act, or was subject to a loan under section 202 of the Housing Act of 1959."  <u>Id.</u>  In another section entitled "Tenant participation in multifamily housing projects," the statute speaks of the "benefits of cooperation and participation of tenants in creating a suitable living environment in multifamily housing projects . . . ."  12 U.S.C. § 1715z-1b(a).  In that section, the term "multifamily housing project" is also limited to projects involving rental or housing assistance payment.  <u>Id.</u>

The statute states that "the term 'multifamily housing project' means a project which is eligible for assistance as described in section 201(c) of this Act [12 USCS § 1715z-1a(c)] or section 202 of the Housing Act of 1959 [12 USCS § 1701q], or a project which receives project-based assistance under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) or enhanced vouchers under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, the provisions of the Emergency Low Income Housing Preservation Act of 1987, or the Multifamily Assisted Housing Reform and Affordability Act of 1997." Id. None of these federally funded projects involve the type of federal assistance for homeownership that is involved in this case.

Indeed, the Court cannot find anywhere in the relevant statutes or regulations in which the term "multifamily housing project" is used in connection with the type of affordable housing built and sold by the defendants. Rather, affordable housing units that are to be sold, as opposed to rented, are generally referred to in both statutes and regulations with either the phrase "Homeownership" or "Single Family." See 12 U.S.C. § 1715z-11a ("The term 'residential property' means a property that is a multifamily housing project or a single family property."); 12 U.S.C. § 4116 ("Resident homeownership program"); 24 C.F.R. § 92.2 ("Homeownership means ownership in fee simple title or a 99 year leasehold interest in a one- to four-unit dwelling or in a condominium unit, or equivalent form of ownership approved by

HUD."). <u>Compare</u> 24 C.F.R. Part 207 (Multifamily Housing Insurance), <u>with</u> 24 C.F.R. Part 203 (Single Family Mortgage Insurance).

The conclusion that the HUD regulations regarding multifamily housing are limited to rental assistance or subsidized housing, in contrast to the sale of affordable housing, is supported by the entirety of the HUD regulations the Plaintiff seeks to enforce. The regulations regarding multifamily housing projects in 24 C.F.R. § 8.27, do not speak of purchasing the units, but rather clearly indicate that "multifamily units" are considered rental units. For example, the regulation places requirements on the "owners and manages" of multifamily projects. One of these requirements states, in relevant part, "[W]hen an accessible unit becomes vacant, the owner or manager before offering such units to a non-handicapped applicant shall offer such unit . . . to a current occupant of another unit of the same project . . . , [or] to an eligible qualified applicant on the waiting list having a handicap requiring the accessibility features of the vacant unit . . . . <u>Id.</u> In addition, the regulation permits "the owner or manager" to require an "applicant to agree (<u>and may incorporate this agreement in the lease</u>) to move to a non-accessible unit when available." <u>Id.</u> (emphasis added). This language unquestionably refers to rental units and has no relevance to units for purchase.

Further, although the Plaintiff seeks to enforce the regulations on multifamily projects, the same HUD regulations provide more relevant regulations for the sale of

affordable housing.  24 C.F.R. § 8.29 is entitled "Homeownership Programs" and

states:

> Any housing units newly constructed or rehabilitated for purchase or
> single family (including semi-attached and attached) units to be
> constructed or rehabilitated in a program or activity receiving Federal
> financial assistance shall be made accessible upon request of the
> prospective buyer if the nature of the handicap of an expected occupant
> so requires. In such case, the buyer shall consult with the seller or
> builder/sponsor regarding the specific design features to be provided. If
> accessibility features selected at the option of the homebuyer are ones
> covered by the standards prescribed by § 8.32, those features shall comply
> with the standards prescribed in § 8.32. The buyer shall be permitted to
> depart from particular specifications of these standards in order to
> accommodate his or her specific handicap. The cost of making a facility
> accessible under this paragraph may be included in the mortgage amount
> within the allowable mortgage limits, where applicable. To the extent such
> costs exceed allowable mortgage limits, they may be passed on to the
> prospective homebuyer, subject to maximum sales price limitations (see
> 24 C.F.R. 235.320.)

24 C.F.R. § 8.29

The Plaintiff argues that the application of the HUD homeownership

regulations under Section 8.29 is limited to "Sections 235(i) and 235(j), Turnkey III

and Indian Housing Mutual Self-Help programs," which are different from the CDGB

and HOME programs that provided funding in this case.  Although the title of the

regulation states that it applies to " Turnkey III and Indian Housing Mutual Self-Help

programs," this by no way means that the homeownership regulations are inapplicable

to the programs in this case.  Even if the regulations were limited to the programs

listed in the regulation, they remain relevant authority for interpreting and

implementing Section 504 of the Rehabilitation Act with regard to other homeownership programs. "[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " Bragdon v. Abbott, 524 U.S. 624, 642, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139-140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)). As this motion to dismiss is not a challenge to the validity of the regulations under the Administrative Procedures Act, the Court need not, as the parties request, prescribe a degree of deference to the HUD regulations under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Because HUD was directed by Congress to issue regulations implementing the Rehabilitation Act, "its views warrant respect." Olmstead, 527 U.S. at 598, 119 S. Ct. at 2186, 144 L. Ed. 2d 540.

By looking to HUD regulations implementing other similar homeownership programs, the conclusion that the application of Section 8.29 is not limited to Sections 235(i) and 235(j), Turnkey III and Indian Housing Mutual Self-Help programs is confirmed. For instance, in 1993 HUD promulgated rules implementing a program that is similar to the HOPE and CDBG homeownership programs, that is, the HOPE for Homeownership of Single Family Homes Program. In implementing this homeownership program, HUD specifically stated that, with respect to discrimination

against handicapped under section 504 of the Rehabilitation Act of 1973, "the provisions of 24 CFR 8.29 apply." <u>See</u> HOPE for Homeownership of Single Family Homes Program, 58 Fed. Reg. 36518, 36542 (July 7, 1993), codified at 24 C.F.R. § 572.405.

The sale of affordable housing by the defendants in this case is similar to the homeownership programs under Section 8.29 rather than the multifamily housing projects in Sections 8.22 and 8.27 that the Plaintiff seeks to enforce. Thus, it would simply be unreasonable to enforce the regulations governing multifamily projects to recipients of federal funds for homeownership programs when there is a more relevant regulation with regard to similar types of programs. Accordingly, Telesca cannot compel the defendants to comply with the implementing regulations of the Rehabilitation Act regarding multifamily projects. In particular, because the defendants are selling affordable housing to eligible applicants, they are not required to comply with the multifamily project regulations that require 5% of the units be set aside for persons with mobility impairments or 2% of units be set aside for persons with visual or auditory impairments. Instead, the defendants must comply with, among other regulations, the homeownership provisions in Section 8.29

However, as to the Plaintiff's other request for injunctive relief, namely, that homeownership lotteries be made available to the disabled by affirmatively advertising the programs to the disabled community, such relief may be available.

HUD regulations regarding the distribution of HOME funds specifically require that recipients affirmatively advertise and give notice of the availability of such housing to the disabled community. See 24 C.F.R. § 92.351. As such, the Court finds that the Plaintiff's allegation that LIHP, the Town of Islip, and DHCR failed to affirmatively market their affordable housing programs financed with HOME funds, and continue to do so, is sufficient to sustain a claim for injunctive relief under the Rehabilitation Act.

The Court notes that any of the HUD regulations implementing the Rehabilitation Act may be relevant in determining whether the defendants are liable under Section 504, and what remedies are available to address such violation. See Henrietta D., 331 at 280. However, at this stage of the case, the Court declines the Plaintiff's request to rule on the applicability or validity of 24 C.F.R. § 8.29. The applicability, validity, and relevance to the Plaintiff's case of all the HUD regulations may be an issue for the Court to decide after the completion of discovery in a motion for summary judgment or at the trial.

As to the Town of Huntington, the Plaintiff only seeks injunctive relief. The complaint does not state a statutory claim against the Town of Huntington under Section 504 for discrimination solely on the basis of a disability. Instead, the complaint only alleges that the Town of Huntington received CDBG funds and did not comply with the multifamily housing regulations by failing to affirmatively market the program to the disabled community and by failing to set aside 5% of units for persons

with mobility impairments. As set forth above, the multifamily regulations are inapplicable to the sale of affordable housing. In addition, the Court cannot find, nor does the plaintiff cite to, any HUD regulation relating to the recipients of CDBG funds that requires sellers of affordable housing to affirmatively market their programs to the disabled community. Accordingly, the motion for judgment on the pleadings is granted, and the complaint is dismissed against the Town of Huntington.

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED**, that the motion by LIHP, Bay Shore Partnership, the Town of Islip, and DHCR to dismiss the complaint as to the Plaintiff's claim under Section 504 is denied; and it is further

**ORDERED**, that the motion by LIHP, Bay Shore Partnership, the Town of Islip, and DHCR to dismiss the complaint as to the Plaintiff's claim that their policies violate the HUD regulations located at 24 C.F.R. 8.22–.27 is granted; and it is further

**ORDERED**, that the motion by the Town of Huntington for judgment on the pleadings dismissing the complaint against it is granted; and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the caption as follows:

```
-----------------------------------------------------------------------X
```
MARIA TELESCA,

                             Plaintiff,

          -against-

THE LONG ISLAND HOUSING PARTNERSHIP, INC.;
BAY SHORE PARTNERSHIP HOUSING
DEVELOPMENT FUND COMPANY, INC.; TOWN OF ISLIP;
BEECHWOOD SOUTH WIND BUILDING CORP.; and
NEW YORK STATE DIVISION OF HOUSING AND
COMMUNITY RENEWAL,

                         Defendants.
```
-----------------------------------------------------------------------X
```

       **IT IS FURTHER ORDERED**, that the parties are directed to report to United

States Magistrate Judge E. Thomas Boyle to set a schedule for the completion of

discovery.

       **SO ORDERED**.

Dated  Central Islip, New York
       August 12, 2006

                               */s/ Arthur D. Spatt*
                                ARTHUR D. SPATT
                       United States District Judge